## ORVILLE CROWDER v. STATE.

No. A-7267.  Opinion Filed April 26, 1930.
(287 Pac. 739.)

F. R. Blosser, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was jointly informed against with Verner Davis and Ray McDonald, charged with the possession of intoxicating liquor with intent to sell, barter, give away, or otherwise furnish the same to others contrary to the law; was tried separately and convicted; and sentenced to pay a fine of $75 and be imprisoned in the county jail for thirty days.   From the judgment the defendant has appealed to this court.

H. B. Hibler, a witness for the state, in substance testified he was a deputy sheriff  on the 10th day of February, 1928; he was out to the place where the defendant lived looking for Bessie bank robbers.  Over the objections of the defendants, he claimed they found a dugout; a pump, furnace, and vats were in the dugout; the dugout had not been used for the manufacture of whisky.   Then witness testified as to the lay of the land, and that they

went across from the defendant's place about a quarter of a mile, and about the same distance from the dugout, and found a keg containing about six gallons of whisky. "There was no one at home when we went on the premises, but later on a man by the name of Davis and his wife came. Witness stated it was something like a month after the search before I saw the defendant and had a talk with him," and defendant told him his brother-in-law Davis and his wife had nothing to do with the outfit; that he would take full responsibility for it himself. The defendant did not admit that the whisky found belonged to him; "we talked some little bit, but nothing more was said about the whisky; we followed some tracks that went into the field; there was not a well-beaten path." The witness stated the defendant had been gone a day or two before the officers were out there; that the whisky found was not on the place occupied by the defendant; when the defendant was talking to witness, "he did not admit any knowledge or ownership of the whisky we found; he just said that he took full responsibility for what was found on his place. I just arrested him, and he told me he would come in; it was not a plain path to where we found the whisky; the track going toward where we found the whisky had been made a short time; I would not say how long; about a week at most. The tracks we found were made by small boots; I never have seen Mr. Crowder wear boots, and I do not know who made the tracks."

Burnam Davis testified he was acquainted with the defendant; that he moved on the place some time in June, 1927; he bought the crop from a man by the name of Fred Lucas; that after he moved there Orville Crowder was not there very much of the time; that after he lived on the place a short while he left and went to Arkansas City; the defendant was in charge of the place while he was gone;

"I was in Arkansas City about a month and a half or two months; I had been back on the farm about a week prior to the 10th day of February, 1928; I never saw anything the officers found, or if they found anything I do not know to whom it belonged; I do not know who built the dugout; it was something like a quarter of a mile from where I lived to the dugout; the defendant Orville Crowder said the dugout was his; I do not know where they claimed to have found the whisky; the defendant never did tell me anything about taking full responsibility for the whisky that was found by the officers; I never saw the defendant operating a still, nor did I ever see him have any parts of a still. I do not know where the officers found the whisky, but they told me they found it on the adjoining place."

The defendant has filed five assignments of error alleged to have been committed by the court in the trial of his case. The first assignment is error of the court in overruling plaintiff in error's motion for a new trial; second, the court erred in not sustaining the plaintiff in error's demurrer to the evidence and motion for an instructed verdict. These two assignments are all that are necessary to arrive at a proper decision in this case.

The defendant contends that there is no testimony connecting him with the possession of the whisky alleged to have been found on the adjoining place, about a quarter of a mile from the place the defendant had in control which was occupied by Davis and his wife, and within a quarter of a mile from what has been designated in the testimony as a dugout.

The testimony of the only witness for the state that knows anything about where the whisky was alleged to have been found on the adjoining place, about a quarter

of a mile from the defendant's house, is that tracks leading to where the whisky was found were made by small boots, and that he had never seen the defendant Crowder wear boots, and that he did not know who made the tracks.

The testimony further shows that the defendant was not at the place at the time the officers made the search, and that it was about a month after they made the search before the defendant talked to the deputy sheriff, and the deputy sheriff states that the defendant did not admit that he had anything to do with the whisky that was found on the adjoining farm a distance of a quarter of a mile from the defendant's house. There is no testimony in the record connecting the defendant in any way whatever with the possession of the whisky alleged to have been found on the adjoining farm about a quarter of a mile from the house.

In Mater v. State, 9 Okla. Cr. 380, 132 Pac. 383, in the second paragraph of the syllabus, this court said:

"In a prosecution for having possession of intoxicating liquors with intent to sell same, the burden was on the state to prove that the place where the liquor was found was in defendant's possession or under his control, or that the intoxicating liquor was his, or that he had possession of same either as owner or employee."

In Taylor et al. v. State, 37 Okla. Cr. 23, 255 Pac. 714, in the first paragraph of the syllabus, this court said:

"Evidence that defendants were seen coming out of a vacant 40-acre tract of land, near center of which were a still and various trails leading in different directions, held insufficient to sustain conviction for unlawful possession of intoxicating liquor."

In the body of the opinion, in discussing the weight of the evidence, the court said:

"The evidence that defendants were in possession of the whisky found is not clearly made to appear. There should be some proof that defendants were in possession of the intoxicating liquor found or such circumstances from which it may be reasonably and logically inferred, such as proof of the ownership, or control of the land where it was found, or such connection with it that it can be said that there is proof of possession."

In White et al. v. State, 13 Okla. Cr. 76, 162 Pac. 232, 233, in the body of the opinion it is said:

"A new trial shall be granted, 'when the verdict is contrary to law or evidence.' Under this provision the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence to render it safe to allow the verdict to stand is imposed upon the trial court in the first instance, and on appeal upon this court. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is put upon his trial for an offense. Benson v. State, 10 Okla. Cr. 16, 133 Pac. 271."

In Davis et al. v. State, 39 Okla. Cr. 380, 265 Pac. 651, 652, this court in the opinion said: "When the verdict is manifestly contrary to the evidence, or a conviction is based on entirely insufficient evidence, the judgment or conviction will be reversed."

We are of the opinion that the judgment in this case is contrary to the evidence, and that the trial court erred in refusing to advise the jury to bring in a verdict of acquittal, and in overruling the defendant's motion for a new trial.

It follows that the judgment should be, and the same is hereby, reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.